# In the United States Court of Federal Claims

No. 20-2023C

Filed: August 15, 2021

| | |
|---|---|
| * * * * * * * * * * * * * *<br>**CLIFFORD HILAIRE,**<br><br>Plaintiff,<br><br>v.<br><br>**UNITED STATES,**<br><br>Defendant.<br>* * * * * * * * * * * * * * | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

**Clifford Hilaire**, pro se, Waldorf, MD.

**Eric J. Singley**, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant; With him were **Martin F. Hockey, Jr.**, Acting Director, Commercial Litigation Branch; and **Brian M. Boynton**, Acting Assistant Attorney General, Civil Division. **Major Hank D. Nguyen**, United States Air Force, of counsel.

## O P I N I O N

**HORN, J.**

### FINDINGS OF FACT

This case has a lengthy history of filings by pro se plaintiff Clifford Hilaire with the United States Air Force, and now in the United States Court of Federal Claims.[1] After the plaintiff was unsatisfied with the results of the agency proceedings, plaintiff filed a complaint in the above-captioned case in this court on December 22, 2020, seeking damages as a result of the Air Force Reserve's allegedly failure to pay plaintiff an enlistment bonus "after initial Active duty training in 2006." Plaintiff claims the amount allegedly due to plaintiff should be adjusted for inflation, but the complaint and subsequent filings refer to inconsistent amounts due including $19,362.28, $15,000.00+, and $15,000.00.

---

[1] The court notes that Mr. Hilaire also has another pending case in this court, Case No. 20-894C, on matters unrelated to the issues raised in the case currently before the undersigned.

Among his multiple allegations, plaintiff's complaint states "[t]his is a claim against a federal government agency, *(i.e. the United States Air Force Reserve and Defense Finance and Accounting Service (DFAS))* to recover an overdue Non Prior Service Enlistment bonus *(15K+)*."[2] According to plaintiff's complaint:

> The Air Force Reserve failed to disburse any portion of the $15K the Initial enlistment bonus to the plaintiff after initial Active duty training in 2006. In 2014, the plaintiff filed a complaint to the AFBCMR [Air Force Board of Correction of Military Records] (Case# BC-2014-02305). In 2015, the AFBCMR agreed that a bonus was due to the plaintiff and directed all officer "who are required to take all necessary and appropriate action consistent with the correction noted" upon receipt of translated foreign HS diploma from the plaintiff. The plaintiff promptly provided all request documents to 514th AMW personnel the in 2016. After multiple unfruitful back and forth, the 514th AMW personnel became unresponsive to the plaintiff communication attempt. The plaintiff filed another complaint to the AFBCMR in January 2020 (Case# BC-2020-00790) to seek relief and request to have this amount delivered to his TSP account instead of a direct payment. This case was administratively closed on by the AFBCMR with the reply "The Defense Finance and Accounting Service (DFAS) has informed the Board, the request for change/correction of your TSP [Thrift Savings Plan] is not viable since the Board and DFAS arc unable to effect the desired correction." This is clearly untrue. After a conversation with TSP personnel, per Form TSP-60 instructions, a rollover can be made (See Form TSP-60 instructions). To complete a rollover of the funds, Section II of the form must be completed by the administrator of the eligible employer plan from which the distribution is being (or was) made (i.e. the Air Force Reserve and/or DFAS) or submit an IRS Letter of Determination or a letter on the organization's letterhead confirming that the funds are being transferred (or rolled over) from a qualified plan (see section II instructions). Therefore, it well within the capacity of the Air Force Reserve and/ or DFAS to provide the relief the plaintiff is seeking.

(brackets added).

In an August 28, 2015 decision, the AFBCMR noted that

AFRC/RSOO [Air Force Recruiting Service, Officer Procurement Division] recommends approval, contingent upon the applicant providing a valid HS diploma. The applicant's Air Force Specialty Code (AFSC) was on the bonus list at his unit in Fiscal Year 2005 (FY05) and he held the required qualifications. However, due to a breakdown in communication between the

---

[2] Capitalization, grammar, punctuation, abbreviations, spelling, emphasis, and choice of words when quoted in this Opinion are as they originally appear in plaintiff's submissions to this court.

> recruiter, Military Personnel Flight (MPF) and the applicant, he did not receive the bonus. There are strong indications the applicant was never informed he needed to provide his HS diploma. His recruiter informed him that his college transcripts would suffice and he took the transcripts to the MPF to update both his rank and bonus eligibility. The MPF awarded the advancement in rank but not the bonus. There is no indication the MPF advised the recruiter the bonus was not included since they had not received the applicant's HS diploma.
>
> The applicant had a foreign HS diploma that would have needed to be interpreted and validated. The applicant scored in the 90s on the ASVAB across the board and In Accordance With (IAW) AFRCI 36- 2001, *Recruiting Instruction*, Table 3, since his score was well above 65, he did not require HS transcripts to enlist. The applicant was misinformed and provided all the necessary documents in a timely manner.

(capitalization and emphasis in original). The AFBCMR determined that:

> 1. The applicant has exhausted all remedies provided by existing law or regulations.
> 2. The application was not timely filed; however, it is in the interest of justice to excuse the failure to timely file.
> 3. Sufficient relevant evidence has been presented to demonstrate the existence of an error or injustice. Having carefully reviewed this application, we agree with the recommendations of the Air Force offices of primary responsibility and adopt the rationale expressed as the basis for our decision that the applicant has been the victim of either an error or an injustice. Therefore, we recommend the applicant's records be corrected as indicated below.
>
> The AFBCMR, therefore, concluded:
>
> The pertinent military records of the Department of the Air Force relating to the APPLICANT be corrected to show that he qualified for the Non-Prior Service (NPS) Enlistment Incentive as a result of enlisting in the Air Force Reserve for a term of six years on 31 Aug 05, in an authorized incentive (bonus) Duty Air Force Specialty Code (DAFSC) in effect on his Date of Enlistment, contingent upon receipt of a valid English translated High School diploma.

(capitalization in original).

After the 2015 AFBCMR decision, as noted above, plaintiff filed a subsequent complaint with the AFBCMR in January 2020 which requested the payment he alleged was due to him be paid into a TSP account plaintiff had established earlier. The AFBCMR explained:

3

> This is in response to your DD Form 149, *Application for Correction of Military Record,* dated 13 Jan 20, concerning your application for correction of military records. Your case has been administratively closed. The Defense Finance and Accounting Service (DFAS) has informed the Board, the request for change/correction of your TSP is not viable since the Board and DFAS are unable to effect the desired correction.

(capitalization and emphasis in original).

According to plaintiff's complaint, plaintiff also states he seeks "[a] check for the claimed amount (already adjusted for inflation), a distribution statement and a completed form TSP-60 *(per Form TSP-60 Instructions; Section II)* so that I can complete a rollover of the money in to my TSP." Plaintiff later indicated that he seeks

> the court to impose a deadline on the agency to accomplish, by order of preference, one of:
>
> 1) The total overdue sum of $15,000 to be retroactively applied to his TSP account for the year 2016;
>
> 2) The total overdue sum of $19,362.28 adjusted for inflation transferred to the TSP account per TSP-60 instruction; or
>
> 3) The total overdue sum of $15,000 transferred to the TSP account per TSP-60 instruction.

In response to plaintiff's allegations, defendant filed a motion to dismiss arguing although plaintiff was entitled to an enlistment bonus,

> Mr. Hilaire refused to complete the required direct deposit form to receive payment. Instead, Mr. Hilaire filed a second application with the AFBCMR in January 2020, No. BC-2020-00790, in which he requested that the total sum of the enlistment bonus be retroactively applied to his TSP as of the date he submitted his translated diploma.

(internal references omitted). Therefore, defendant argues, "Mr. Hilaire's claim is moot because the Air Force agreed to pay his legal entitlement, but Mr. Hilaire refused to accept payment." Moreover, defendant contends that "Mr. Hilaire is not entiteld [sic] to interest, and there is no legal authority for the Air Force to retroactively contribute Mr. Hilaire's enlistment bonus to his TSP account."

In response to the motion to dismiss, plaintiff states:

> It is to be noted how fundamentally incoherent this entire ordeal was for the plaintiff. The plaintiff was, from educational basis, qualified to enlist and

4

> subsequently more than served is initial obligation at the time he was asked to submit his translated High School diploma. But, for incentive payment purposes, he did not meet the educational requirement. How is a young recruit supposed to decipher such ill-constructed rules and regulations at the time of his/her enlistment? Also, the plaintiff's record shows that he completed high school in 2003.
>
> Since submission of the translated High School Diploma, on or about March 2016, the plaintiff showed nothing but diligence in following up with the unit to end this stalemate To further exhaust all administrative remedies, plaintiff filed another Application to the board since the unit has been non-responsive to any contact from the plaintiff, four years after submission of the translated Diploma, the last point of contact (POC) contacted the plaintiff. No explanation of any kind was provided to the plaintiff about the delay. Clearly, the plaintiff had contact the board again to get their attention. It should not have been so.

(internal reference omitted). Although not squarely addressing the arguments in defendant's motion to dismiss, plaintiff nonetheless alleges that the "the AFBCMR's response to the second Application did not address the relief that the Plaintiff was seeking," and argues that "bonuses can be contributed to a member TSP." Plaintiff argues that "[t]he Defendant's Attorney opinion on the amount owed is erroneous," and claims that the "Defendant's delay in resolving this matter has been unreasonable."

After the motion to dismiss was fully briefed, the court held a status conference with the parties to discuss what monies, if any, were now owed plaintiff. At the status conference, the defendant indicated a continuing willingness to assist in expediting a payment to Mr. Hilaire, but only in the amount that defendant calculated is owed to plaintiff. Therefore, defendant submitted a declaration to the court summarizing the calculations that the United States Air Force was using to determine the amount due to plaintiff. The declaration stated: "Had Mr. Hilaire completed all required paperwork for his Non-Prior Service Enlistment Bonus," Master Sergeant Raphael Wescott of Joint Base McGuire Dix-Lakehurst would have been the appropriate official to certify the bonus. The declaration indicates that Master Sergeant Wescott oversees processing enlistments, and benefits, and determined that plaintiff's total enlistment bonus was calculated as $7,833.01.

## DISCUSSION

As indicated above, defendant has moved to dismiss plaintiff's complaint and argues that this court does not have subject matter jurisdiction to consider any of the allegations in plaintiff's complaint, as plaintiff's claim is moot.

The court recognizes that plaintiff is proceeding pro se. When determining whether a complaint filed by a pro se plaintiff is sufficient to invoke review by a court, a pro se

plaintiff is entitled to a more liberal construction of the pro se plaintiff's pleadings. See Haines v. Kerner, 404 U.S. 519, 520-21 (requiring that allegations contained in a pro se complaint be held to "less stringent standards than formal pleadings drafted by lawyers"), reh'g denied, 405 U.S. 948 (1972); see also Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hughes v. Rowe, 449 U.S. 5, 9-10 (1980); Estelle v. Gamble, 429 U.S. 97, 106 (1976), reh'g denied, 429 U.S. 1066 (1977); Matthews v. United States, 750 F.3d 1320, 1322 (Fed. Cir. 2014); Jackson v. United States, 143 Fed. Cl. 242, 245 (2019), Diamond v. United States, 115 Fed. Cl. 516, 524 (2014), aff'd, 603 F. App'x 947 (Fed. Cir.), cert. denied, 135 S. Ct. 1909 (2015). However, "there is no 'duty [on the part] of the trial court . . . to create a claim which [plaintiff] has not spelled out in his [or her] pleading . . . .'" Lengen v. United States, 100 Fed. Cl. 317, 328 (2011) (alterations in original) (quoting Scogin v. United States, 33 Fed. Cl. 285, 293 (1995) (quoting Clark v. Nat'l Travelers Life Ins. Co., 518 F.2d 1167, 1169 (6th Cir. 1975))); see also Bussie v. United States, 96 Fed. Cl. 89, 94, aff'd, 443 F. App'x 542 (Fed. Cir. 2011); Minehan v. United States, 75 Fed. Cl. 249, 253 (2007). "While a pro se plaintiff is held to a less stringent standard than that of a plaintiff represented by an attorney, the pro se plaintiff, nevertheless, bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." Riles v. United States, 93 Fed. Cl. 163, 165 (2010) (citing Hughes v. Rowe, 449 U.S. at 9; and Taylor v. United States, 303 F.3d 1357, 1359 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2002)); see also Kelley v. Secretary, U.S. Dep't of Labor, 812 F.2d 1378, 1380 (Fed. Cir. 1987) ("[A] court may not similarly take a liberal view of [] jurisdictional requirement[s] and set a different rule for pro se litigants only."); Hartman v. United States, 150 Fed. Cl. 794, 796 (2020); Schallmo v. United States, 147 Fed. Cl. 361, 363 (2020); Hale v. United States, 143 Fed. Cl. 180, 184 (2019) ("[E]ven pro se plaintiffs must persuade the court that jurisdictional requirements have been met." (citing Bernard v. United States, 59 Fed. Cl. 497, 499, aff'd, 98 F. App'x 860 (Fed. Cir. 2004))); Golden v. United States, 129 Fed. Cl. 630, 637 (2016); Shelkofsky v. United States, 119 Fed. Cl. 133, 139 (2014) ("[W]hile the court may excuse ambiguities in a pro se plaintiff's complaint, the court 'does not excuse [a complaint's] failures.'" (quoting Henke v. United States, 60 F.3d 795, 799 (Fed. Cir. 1995))); Harris v. United States, 113 Fed. Cl. 290, 292 (2013) ("Although plaintiff's pleadings are held to a less stringent standard, such leniency 'with respect to mere formalities does not relieve the burden to meet jurisdictional requirements.'" (quoting Minehan v. United States, 75 Fed. Cl. at 253)).

"Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed. Cir. 2004) (Fanning, Phillips & Molnar v. West, 160 F.3d 717, 720 (Fed. Cir. 1998)), reh'g and reh'g en banc denied (Fed. Cir. 2004), cert. denied, 545 U.S. 1127 (2005); see also St. Bernard Parish Gov't v. United States, 916 F.3d 987, 992-93 (Fed. Cir. 2019) ("[T]he court must address jurisdictional issues, even sua sponte, whenever those issues come to the court's attention, whether raised by a party or not, and even if the parties affirmatively urge the court to exercise jurisdiction over the case." (citing Foster v. Chatman, 136 S. Ct. 1737, 1745 (2016)); Int'l Elec. Tech. Corp. v. Hughes Aircraft Co., 476 F.3d 1329, 1330 (Fed. Cir. 2007); Haddad v. United States, 152 Fed. Cl. 1, 16 (2021); Fanelli v. United States, 146 Fed. Cl. 462, 466 (2020). The Tucker Act, 28 U.S.C. § 1491 (2018), grants jurisdiction to this court as follows:

6

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, the Tucker Act waives sovereign immunity to allow jurisdiction over claims against the United States (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government, or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Navajo Nation, 556 U.S. 287, 289-90 (2009); see also Me. Community Health Options v. United States, 140 S. Ct. 1308, 1327-28 (2020); United States v. Mitchell, 463 U.S. 206, 216 (1983); Sanford Health Plan v. United States, 969 F.3d 1370, 1378 (Fed. Cir. 2020); Alvarado Hosp., LLC v. Price, 868 F.3d 983, 991 (Fed. Cir. 2017); Greenlee Cnty., Ariz. v. United States, 487 F.3d 871, 875 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2007), cert. denied, 552 U.S. 1142 (2008); Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); Gulley v. United States, 150 Fed. Cl. 405, 411 (2020); Kuntz v. United States, 141 Fed. Cl. 713, 717 (2019). "Not every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act. The claim must be one for money damages against the United States . . . ." United States v. Mitchell, 463 U.S. at 216; see also United States v. White Mountain Apache Tribe, 537 U.S. 465, 472 (2003); N.Y. & Presbyterian Hosp. v. United States, 881 F.3d 877, 881 (Fed. Cir. 2018); Smith v. United States, 709 F.3d 1114, 1116 (Fed. Cir.), cert. denied, 571 U.S. 945 (2013); RadioShack Corp. v. United States, 566 F.3d 1358, 1360 (Fed. Cir. 2009); Rick's Mushroom Serv., Inc. v. United States, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("[P]laintiff must . . . identify a substantive source of law that creates the right to recovery of money damages against the United States."); Olson v. United States, 152 Fed. Cl. 33, 40-41 (2021); Jackson v. United States, 143 Fed. Cl. at 245. In Ontario Power Generation, Inc. v. United States, the United States Court of Appeals for the Federal Circuit identified three types of monetary claims for which jurisdiction is lodged in the United States Court of Federal Claims. The Ontario Power Generation, Inc. court wrote:

> The underlying monetary claims are of three types. . . . First, claims alleging the existence of a contract between the plaintiff and the government fall within the Tucker Act's waiver . . . . Second, the Tucker Act's waiver encompasses claims where "the plaintiff has paid money over to the Government, directly or in effect, and seeks return of all or part of that sum." Eastport S.S. [Corp. v. United States, 178 Ct. Cl. 599, 605-06,] 372 F.2d [1002,] 1007-08 [(1967)] (describing illegal exaction claims as claims "in which 'the Government has the citizen's money in its pocket'" (quoting Clapp v. United States, 127 Ct. Cl. 505, 117 F. Supp. 576, 580 (1954)) . . . . Third, the Court of Federal Claims has jurisdiction over those claims where "money has not been paid but the plaintiff asserts that he is nevertheless

> entitled to a payment from the treasury." Eastport S.S., 372 F.2d at 1007. Claims in this third category, where no payment has been made to the government, either directly or in effect, require that the "particular provision of law relied upon grants the claimant, expressly or by implication, a right to be paid a certain sum." Id.; see also [United States v. ]Testan, 424 U.S. [392,] 401-02 [(1976)] ("Where the United States is the defendant and the plaintiff is not suing for money improperly exacted or retained, the basis of the federal claim-whether it be the Constitution, a statute, or a regulation-does not create a cause of action for money damages unless, as the Court of Claims has stated, that basis 'in itself . . . can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.'" (quoting Eastport S.S., 372 F.2d at 1009)). This category is commonly referred to as claims brought under a "money-mandating" statute.

Ont. Power Generation, Inc. v. United States, 369 F.3d 1298, 1301 (Fed. Cir. 2004); see also Samish Indian Nation v. United States, 419 F.3d 1355, 1364 (Fed. Cir. 2005); Twp. of Saddle Brook v. United States, 104 Fed. Cl. 101, 106 (2012).

To prove that a statute or regulation is money-mandating, a plaintiff must demonstrate that an independent source of substantive law relied upon "'can fairly be interpreted as mandating compensation by the Federal Government.'" United States v. Navajo Nation, 556 U.S. at 290 (quoting United States v. Testan, 424 U.S. at 400); see also United States v. White Mountain Apache Tribe, 537 U.S. at 472; United States v. Mitchell, 463 U.S. at 217; Blueport Co., LLC v. United States, 533 F.3d 1374, 1383 (Fed. Cir. 2008), cert. denied, 555 U.S. 1153 (2009); Szuggar v. United States, 145 Fed. Cl. 331, 335 (2019The source of law granting monetary relief must be distinct from the Tucker Act itself. See United States v. Navajo Nation, 556 U.S. at 290 (The Tucker Act does not create "substantive rights; [it is simply a] jurisdictional provision[] that operate[s] to waive sovereign immunity for claims premised on other sources of law (*e.g.*, statutes or contracts)."); see also Me. Community Health Options v. United States, 140 S. Ct. at 1327-28. "'If the statute is not money-mandating, the Court of Federal Claims lacks jurisdiction, and the dismissal should be for lack of subject matter jurisdiction.'" Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1308 (Fed. Cir. 2008) (quoting Greenlee Cnty., Ariz. v. United States, 487 F.3d at 876); see also N.Y. & Presbyterian Hosp. v. United States, 881 F.3d at 881; Fisher v. United States, 402 F.3d 1167, 1173 (Fed. Cir. 2005) (noting that the absence of a money-mandating source is "fatal to the court's jurisdiction under the Tucker Act"); Olson v. United States, 152 Fed. Cl. at 41; Downey v. United States, 147 Fed. Cl. 171, 175 (2020) ("And so, to pursue a substantive right against the United States under the Tucker Act, a plaintiff must identify and plead a money-mandating constitutional provision, statute, or regulation." (citing Cabral v. United States, 317 F. App'x 979, 981 (Fed. Cir. 2008))); Jackson v. United States, 143 Fed. Cl. at 245 ("If the claim is not based on a 'money-mandating' source of law, then it lies beyond the jurisdiction of this Court." (citing Metz v. United States, 466 F.3d 991, 997 (Fed. Cir. 2006)).

8

"Determination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 9-10 (1983)), reh'g denied (Fed. Cir. 1997); see also Klamath Tribe Claims Comm. v. United States, 97 Fed. Cl. 203, 208 (2011); Gonzalez-McCaulley Inv. Grp., Inc. v. United States, 93 Fed. Cl. 710, 713 (2010). A plaintiff need only state in the complaint "a short and plain statement of the grounds for the court's jurisdiction," and "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(1), (2) (2020); Fed. R. Civ. P. 8(a)(1), (2) (2021); see also Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57, 570 (2007)). To properly state a claim for relief, "[c]onclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim." Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998); see also McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1363 n.9 (Fed. Cir. 2007) (Dyk, J., concurring in part, dissenting in part) (quoting C. WRIGHT AND A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1286 (3d ed. 2004)). "A plaintiff's factual allegations must 'raise a right to relief above the speculative level' and cross 'the line from conceivable to plausible.'" Three S Consulting v. United States, 104 Fed. Cl. 510, 523 (2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555), aff'd, 562 F. App'x 964 (Fed. Cir.), reh'g denied (Fed. Cir. 2014); see also Hale v. United States, 143 Fed. Cl. at 190. As stated in Ashcroft v. Iqbal, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' 550 U.S. at 555. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 555).

Defendant argues that plaintiff's claim "is moot because the Air Force agreed to pay his legal entitlement, but Mr. Hilaire refused to accept payment." "Mootness is a jurisdictional question. . . ." North Carolina v. Rice, 404 U.S. 244, 246 (1971); see also Pearson v. United States, 139 Fed. Cl. 427, 433 (2018). "While Congress created this court [the United States Court of Federal Claims] under Article I of the U.S. Constitution and the 'case or controversy' requirement appears in Article III, the mootness doctrine and other justiciability precepts—including ripeness and standing—have often been properly invoked by this court," Emery Worldwide Airlines, Inc. v. United States, 47 Fed. Cl. 461, 469 (2000), and are applicable in this court. As stated by the United States Court of Appeals for the Federal Circuit:

> The Court has explained that a case becomes moot when it has "lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law." Hall v. Beals, 396 U.S. 45, 48, 90 S. Ct. 200, 24 L. Ed. 2d 214 (1969). Thus, to avoid dismissal for mootness, an actual controversy must remain at all stages, not merely at the time the complaint is filed. E.g., Steffel v. Thompson, 415 U.S. 452, 460 n. 10, 94 S. Ct. 1209, 39 L. Ed. 2d 505 (1974).

Gerdau Ameristeel Corp. v. United States, 519 F.3d 1336, 1340 (Fed. Cir. 2008). Moreover, "'a case is moot when the issues presented are no longer "live" or the parties

9

lack a legally cognizable interest in the outcome.'" Cnty. of Los Angeles v. Davis, 440 U.S. 625, 631 (1979) (quoting Powell v. McCormack, 395 U.S. 486, 496 (1969)). A case becomes moot if "it can be said with assurance that 'there is no reasonable expectation . . .' that the alleged violation will recur," and that (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Id. (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)); see also Calderon v. Moore, 518 U.S. 149, 150 (1996); Chapman L. Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 940 (Fed. Cir. 2007).

In Schooling v. United States, the plaintiff, a retired Internal Revenue Service (I.R.S.) employee, the I.R.S., and the National Treasury Employees Union entered into a settlement agreement regarding disciplinary action to be taken against plaintiff. See Schooling v. United States, 63 Fed. Cl. 204, 205 (2004). The parties agreed to a fourteen day suspension and the settlement agreement "provided that plaintiff would retire at the end of the suspension. Both plaintiff and the I.R.S. substantially complied with the terms of the agreement: the I.R.S. mitigated the suspension to 14 days and plaintiff retired after serving the suspension." Id. (internal references omitted). Despite the compliance with the settlement agreement, plaintiff filed suit in the United States Court of Federal Claims, alleging that the I.R.S. "materially breached the settlement by failing to issue a decision letter, as required by Section 7503(b)(4) of the Civil Service Reform Act of 1978." Schooling v. United States, 63 Fed. Cl. at 205. The Judge of the United States Court of Federal Claims explained:

> In this case, plaintiff's breach of contract claim was based on the failure of the I.R.S. to issue a decision letter setting forth the reasons for the suspension. The I.R.S. issued a decision letter to plaintiff on August 25, 2004. Since plaintiff is now retired from the I.R.S., it is unlikely that this type of alleged breach would be repeated. Therefore, plaintiff cannot be granted any effective relief by the court.

Id. at 209 (citing Calderon v. Moore, 518 U.S. at 150) (internal citations omitted).

In this case now before the court, plaintiff sought payment for his enlistment bonus at the AFBCMR. The 2015 AFBCMR decision concluded:

> The pertinent military records of the Department of the Air Force relating to the APPLICANT be corrected to show that he qualified for the Non-Prior Service (NPS) Enlistment Incentive as a result of enlisting in the Air Force Reserve for a term of six years on 31 Aug 05, in an authorized incentive (bonus) Duty Air Force Specialty Code (DAFSC) in effect on his Date of Enlistment, contingent upon receipt of a valid English translated High School diploma.

(capitalization in original). Despite the subsequent submission of a "valid English translated High School diploma," plaintiff chose not to complete the required forms in order to receive payment from the Air Force. Instead, as noted above, plaintiff filed a

subsequent complaint with the AFBCMR in January 2020 which requested the payment he alleged was due to him be paid into a TSP account he had established. The AFBCMR responded: "Your case has been administratively closed. The Defense Finance and Accounting Service (DFAS) has informed the Board, the request for change/correction of your TSP is not viable since the Board and DFAS are unable to effect the desired correction." (capitalization and emphasis in original). Mr. Hilaire continued to seek payment for his enlistment bonus and for which the Air Force had agreed to pay him and filed suit in the United States Court of Federal Claims. Again in this court, defendant has repeatedly made clear, the "Air Force agreed to pay his legal entitlement, but Mr. Hilaire refused to accept payment." As indicated above, the United States Supreme Court has held "'a case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" Cnty. of Los Angeles v. Davis, 440 U.S. at 631 (quoting Powell v. McCormack, 395 U.S. at 496). The issue of Mr. Hilaire's entitlement to his enlisted bonus is settled, defendant has agreed, after multiple reviews and adjudications, that plaintiff is owed monies. There is, therefore, no live controversy for plaintiff's claim. Plaintiff's claim for payment is moot. See id. Furthermore, as plaintiff cannot seek another enlistment bonus available to individuals who have not previously served in the armed forces, see 37 U.S.C.A. § 308c (2018), because plaintiff has already served in the armed forces, there is no reasonable expectation that this alleged failure to pay would recur. See Calderon v. Moore, 518 U.S. at 150.

As explained by the Supreme Court, "[t]he available remedy, however, does not need to be 'fully satisfactory' to avoid mootness. Church of Scientology of Cal. v. United States, 506 U.S. 9, 13, 113 S. Ct. 447, 450, 121 L. Ed. 2d 313 (1992). To the contrary, even the availability of a 'partial remedy' is 'sufficient to prevent [a] case from being moot.' Ibid." Calderon v. Moore, 518 U.S. at 150. Therefore, if plaintiff can demonstrate that he is entitled to paid into his TSP account, or that he is entitled to interest on his claim, plaintiff may avoid having his claim be found moot.

Regarding payment into his TSP account, plaintiff offers no authority that the Air Force could pay his enlistment bonus into his TSP account. Rather, plaintiff simply states in his response to the motion to dismiss:

> The defendant's Attorney is wasting the court's time by arguing well-settled matter and matter that are beyond the control of the Air Force itself. Bonus payment can be contributed to TSP plan. Since the plaintiff is no longer employed by the Air Force, he can no longer specify via his mypay account or a TSP-U-1 where he wants the money to go. Since the board did not explain why the plaintiff request was administratively close, as an alternative, the plaintiff spoke to the TSP personnel to find alternative way to have the money deposited to my TSP account. The defendant's Attorney is further expressing his concern about yearly contribution limit and etc. The defendant's Attorney can rest assured that the plaintiff has already done the legwork. Those concerns are for the plaintiff and the TSP personnel alone to worry about. If the attorney concerns are genuine, he should have

11

> contacted TSP personnel himself to confirm that the plaintiff will not be penalize in anyway.

(internal reference omitted). Neither the defendant, nor the court, can take plaintiff's word that any "concerns are for the plaintiff and the TSP personnel alone to worry about."[3] Furthermore, defendant notes that "if Mr. Hilaire had a TSP account during the relevant period, which he does not allege, Mr. Hilaire would need to demonstrate that he would have actually been able to contribute the full amount he seeks to his TSP without exceeding his maximum contribution limits," and that such a deposit could still be effected today. Most significantly, defendant, citing to 5 C.F.R. § 1605.13, argues Mr. Hilaire's request "is explicitly prohibited by regulation." Notably, 5 C.F.R. § 1605.13(b)(1) provides:

> The following rules apply to participants who receive a back pay award or other retroactive pay adjustment for a period during which the participant was employed in a position that is covered by FERS, CSRS, or an equivalent system under which TSP participation is authorized:
> (1) The participant will be entitled to make up contributions for the period covered by the back pay award or retroactive pay adjustment only if for that period—
> (i) The participant had designated a percentage of basic pay to be contributed to the TSP. . . .

5 C.F.R. § 1605.13 (2020). Plaintiff argues that 5 C.F.R. § 1605.13 does not apply because "bonuses are not basic pay." Despite plaintiff's unsupported claim, included with defendant's submission is a declaration of Lisa Weierbach, Chief, Air Force Central Processing Division, DFAS (Defense Finance and Accounting Service). Ms. Weierbach represents that

> [f]rom my review of the records, I conclude that Mr. Hilaire had no TSP election in the period from his enlistment on 31 August 2005 through the end of his initial six-year service enlistment in August 2011, and through the rest of 2011. Based upon my understanding of federal regulation, 5 C.F.R. § 1605.13(b)(1), and DFAS procedure, DFAS can only process makeup contributions for Mr. Hilaire's back pay if he had designated TSP elections for periods covered by the back pay award. Since Mr. Hilaire made no TSP elections from 2005 through 2011, DFAS cannot process makeup contributions for that period.

Therefore, plaintiff has not demonstrated entitlement to his enlistment bonus being paid into his TSP account.

---

[3] Notably, in a different submission plaintiff contends "the government should not be taken at their word, especially in a case where they have demonstrated massive failures in their administrative practices."

Similarly, although plaintiff makes a number of claims for interest to be paid for his claim, plaintiff cites no authority for interest applicable to his bonus. With regard to a claim for interest against the United States, the longstanding rule has been that the sovereign is not liable for interest on a damage award unless consent to pay has been made explicit by a waiver of sovereign immunity in an act of the legislature or in a lawful contract of its executive officers. See Library of Cong. v. Shaw, 478 U.S. 310, 314-15 (1986); United States v. Alcea Band of Tillamooks, 341 U.S. 48, 49 (1951); United States v. N.Y. Rayon Importing Co., 329 U.S. 654, 659 (1947); United States v. North Carolina, 136 U.S. 211, 216 (1890); United States v. Bayard, 127 U.S. 251, 260 (1888); see also United States v. N. Am. Transp. & Trading Co., 253 U.S. 330, 336 (1920); Shell Oil Co. v. United States, No. 2020-2221, 2021 WL 3377502, at *7 n.3 (Fed. Cir. Aug. 4, 2021) (quoting Richlin Sec. Serv. Co. v. Chertoff, 437 F.3d 1296, 1299 (Fed. Cir. 2006) (quoting Library of Cong. v. Shaw, 478 U.S. at 311)); Athey v. United States, 908 F.3d 696, 703 (Fed. Cir. 2018); Clary v. United States, 333 F.3d 1345, 1351–52 (Fed. Cir. 2003); United States Shoe Corp. v. United States, 296 F.3d 1378, 1381 (Fed. Cir. 2002), cert. denied, 538 U.S. 1056, 123 (2003); Hartog Foods Int'l v. United States, 291 F.3d 789, 791 (Fed. Cir. 2002); Courts must strictly construe waivers of sovereign immunity in favor of the government. Lane v. Pena, 518 U.S. 187, 192 (1996); Library of Cong. v. Shaw, 478 U.S. at 318; Ruckelshaus v. Sierra Club, 463 U.S. 680, 685–86 (1983); McMahon v. United States, 342 U.S. 25, 27, reh'g denied, 342 U.S. 899 (1951); Hartog Foods Int'l v. United States, 291 F.3d at 791. Moreover, "[c]ongressional consent must be unambiguous." IBM v. United States, 201 F.3d 1367, 1370 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2000), cert. denied, 531 U.S. 1183 (2001).

As stated by the United States Supreme Court:

> Thus, there can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed.

United States v. N.Y. Rayon Importing Co., 329 U.S. at 659 (citations omitted). The Supreme Court succinctly summarized the historical background of the no-interest rule, requiring a separate waiver of sovereign immunity for interest, as follows:

> In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award. This requirement of a separate waiver reflects the historical view that interest is an element of damages separate from damages on the substantive claim. Because interest was generally presumed not to be within the contemplation of the parties, common-law courts in England allowed interest by way of damages only when founded upon agreement of the parties. In turn, the agreement-basis of interest was adopted by American courts. Gradually, in suits between private parties, the

13

necessity of an agreement faded. The agreement requirement assumed special force when applied to claims for interest against the United States. As sovereign, the United States, in the absence of its consent, is immune from suit. This basic rule of sovereign immunity, in conjunction with the requirement of an agreement to pay interest, gave rise to the rule that interest cannot be recovered unless the award of interest was affirmatively and separately contemplated by Congress.

Library of Cong. v. Shaw, 478 U.S. at 314–15 (citations omitted).

Defendant argues "[i]nterest is not available for Mr. Hilaire," and notes that "Mr. Hilaire has not identified any statutory waiver in this case. Thus, Mr. Hilaire is only entitled to the bonus described in the Air Force regulations in August 2005—which the Air Force has already agreed to pay." Defendant also correctly notes that "[t]he AFBCMR did not award interest, and indeed had no authority to do so. The AFBCMR is only explicitly authorized to award interest when the AFBCMR sets aside a court-martial conviction. See 10 U.S.C. § 1552 (c)(4)." Mr. Hilaire has not demonstrated entitlement to interest, has not demonstrated that the AFBCMR awarded him interest, or that the United States has waived sovereign immunity for an award of interest over his enlistment bonus claim.

Finally, to the extent plaintiff believes he is entitled to a bonus in the amount of $15,000.00, the authorizing statute for the bonus at the time of Mr. Hilaire's enlistment, 37 U.S.C. § 308c, "Special pay: bonus for enlistment in the Selected Reserve," provided:

> (a) Any person who enlists in the Selected Reserve of the Ready Reserve of an armed force, is a graduate of a secondary school, and has never previously served in an armed force may be paid a bonus as provided in subsection (b).
> (b) The amount and method of payment of a bonus to be paid under subsection (a) shall be determined in accordance with regulations prescribed under subsection (c), except that the amount of such bonus may not exceed $8,000 and--
> (1) an amount not to exceed one-half of the bonus may be paid upon completion of the initial active duty for training of such person; and
> (2) the remainder of the bonus may be paid in periodic installments or in a lump sum, as determined by the Secretary concerned.

37 U.S.C. § 308c (2004). As defendant correctly notes,

> [t]he Air Force implementing regulation was explicit in requiring that bonuses be paid based on the authorized amount "in effect at the time of member's enlistment." Air Force Instruction (AFI) 36-2638. *Air Force Reserve Enlisted Incentives* (January 26, 2005), para. 2.1.1. The maximum amount authorized by Air Force regulation was $8,000, or less based on Mr. Hilaire's actual participation in his reserve unit training.

14

(capitalization and emphasis in original; internal reference omitted). Furthermore, the 2015 AFBCMR decision specifically noted:

> The pertinent military records of the Department of the Air Force relating to the APPLICANT be corrected to show that he qualified for the Non-Prior Service (NPS) Enlistment Incentive as a result of enlisting in the Air Force Reserve for a term of six years on 31 Aug 05, in an authorized incentive (bonus) Duty Air Force Specialty Code (DAFSC) in effect on his Date of Enlistment, contingent upon receipt of a valid English translated High School diploma.

(capitalization in original).

Plaintiff attempts to argue:

> Although the plaintiff enlisted on 31 August 2005, he did not attend Basic Military Training until summer 2006 (22 May- 30 Jun 2006) and AFSC technical school thereafter. All bonuses are paid based on UTA participation on the anniversary date of enlistment Therefore, the earliest the plaintiff could have met eligibility for any money was on or about late after September 2006, assuming zero delay in the approval process of HQ FARC/DPMB To summarize, the plaintiff only met eligibility after October 2005 for which the max amount was $15,000.

The court notes, however, plaintiff's argument begins: Although the plaintiff enlisted on 31 August 2005. . . ." Therefore, the proper date to consider for enlistment is August 31, 2005, when the maximum bonus available to plaintiff was $8,000.00. As demonstrated in the April 13, 2021 declaration filed by defendant, "[h]ad Mr. Hilaire completed all required paperwork for his Non-Prior Service Enlistment Bonus," Master Sergeant Raphael Wescott of Joint Base McGuire Dix-Lakehurst would have been the appropriate official to certify the bonus, and Master Sergeant Wescott determined that plaintiff's total enlistment bonus was calculated as $7,833.01. Master Sergeant Wescott explained in his declaration: "From my review I concluded that for his first through sixth anniversary, Mr. Hilaire was entitled to bonus payments in the amounts of $1333.33, $1333.33, $1333.33, $1166.34, $1333.33, and $1333.35, respectively. His total entitlement was $7833.01." Master Sergeant Wescott noted, "I have not yet submitted certifications of Mr. Hilaire's bonus. If Mr. Hilaire agrees to resume processing his bonus application or if I am directed to do so, I would submit the aforementioned amounts. Attachment 4 contains six draft memoranda I am prepared to submit, which would certify Mr. Hilaire's eligibility for six payments."

Additionally, the court notes that, although plaintiff's complaint seeks the payment of the enlistment bonus of varying amounts and payable to plaintiff's TSP account, in a June 21, 2021 submission, plaintiff stated:

**What the plaintiff is primarily seeking from this court.** To lawsuit is a review under the Administrative Procedure Act (APA) whereby the government has more than shown egregious/unreasonable delay in performing certain action ). This clearly constitutes an administrative error from the government. Nowhere in any of the defendant's responses/replies is explanation provided to justify such delay.

To the extent plaintiff is alleging a violation of the Administrative Procedure Act (APA) by the Air Force, "the Court of Federal Claims lacks jurisdiction over APA claims." Albino v. United States, 104 Fed. Cl. 801, 815 (2012) (citing Martinez v. United States, 333 F.3d 1295, 1303, 1314 (Fed. Cir. 2003)). As such, the "Federal district courts—not the Court of Federal Claims—are the proper fora for APA actions." Stroughter v. United States, 89 Fed. Cl. 755, 762-63 (2009) (citing 5 U.S.C. § 703; Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1370 n.11 (Fed. Cir. 2005)); see also Crocker v. United States, 125 F.3d 1475, 1476 (Fed. Cir. 1997) (affirming the United States Court of Federal Claims holding "that it lacks the general federal question jurisdiction of the district courts, which would allow it to review the agency's actions and to grant relief pursuant to the Administrative Procedure Act, 5 U.S.C. § § 701-706 (1994)"); HCIC Enters., LLC v. United States, 147 Fed. Cl. 118, 126 (2020) (quoting Stroughter v. United States, 89 Fed. Cl. at 763 ("The APA does not authorize an award of money damages, 5 U.S.C. § 702 (providing for judicial review of actions 'seeking relief other than money damages') and, in any event, it is well-established that '[f]ederal district courts—not the Court of Federal Claims—are the proper fora for APA actions.'")); Allen v. United States, 140 Fed. Cl. 550, 563 (2018) (citing Stroughter v. United States, 89 Fed. Cl. at 763); Amber Res. Co. v. United States, 68 Fed. Cl. 535, 544 (2005), aff'd, 538 F.3d 1358 (Fed. Cir.), reh'g and reh'g en banc denied (Fed. Cir. 2008) ("In the absence of a contrary statute, a challenge to administrative discretion can only be reviewed in district court pursuant to the APA."). Therefore, this court does not have jurisdiction over any APA claim raised by plaintiff.

## CONCLUSION

For the foregoing reasons, this court does not have jurisdiction over plaintiff's allegations. Defendant's motion to dismiss is **GRANTED**. Plaintiff's complaint is **DISMISSED**. The Clerk of the Court shall enter **JUDGMENT** consistent with this Opinion. The court encourages plaintiff to reach out to the Air Force and complete the required administrative steps to be paid the $7,833.01 the Air Force has determined plaintiff is entitled.

**IT IS SO ORDERED**.

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**
